482 A.2d 1101

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Joseph M. LAGANA.**

Superior Court of Pennsylvania.

Argued Oct. 13, 1983.

Filed Oct. 12, 1984.

Petition for Allowance of Appeal Granted April 10, 1985.

---

101

Steven J. Cooperstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Donald S. Bronstein, Assistant Public Defender, Philadelphia, for appellee.

Before SPAETH, President Judge, and MONTEMURO and POPOVICH, JJ.

SPAETH, President Judge:

■ This is an appeal by the Commonwealth from a pretrial order granting appellee's motion to suppress evidence. The evidence in question is a revolver. Appellee is charged with various firearms offenses, and our independent review of the record discloses that if upheld, the order

suppressing the revolver will terminate the prosecution. The order is therefore appealable. *See Commonwealth v. Lapia,* 311 Pa.Super. 264, 457 A.2d 877 (1983). The issue on appeal is whether the trial court erred in holding that the Commonwealth was collaterally estopped from relitigating the validity of the search incident to which the revolver was seized. We hold that the trial court did not err. We therefore affirm its suppression order.

On May 11, 1981, a police officer stopped appellee on a street corner in Philadelphia. The officer found a revolver in appellee's pants. He seized the revolver and also two carrying cases that were on the pavement, a few feet from appellee. On the same day appellee was charged with firearms violations. Subsequently, the contents of the carrying cases were examined and found to be the proceeds of a burglary, and on June 9, 1981, appellee was also charged with burglary, theft and criminal trespass.

On July 31, 1981, appellee filed in the burglary prosecution a motion to suppress the carrying cases that had been seized on May 11, and also, the contents of the cases. On August 28 a hearing was held on the motion before the Honorable Nelson A. DIAZ, and on August 31, after argument, Judge DIAZ held that the police officer's action in stopping appellee, before seizing either the revolver or the carrying cases, constituted an arrest, and that at that time the officer did not have probable cause to arrest. *See* N.T. August 31, 1981, 13. He therefore ordered the carrying cases and their contents suppressed as the fruit of an illegal arrest. The Commonwealth did not appeal this order; instead, it nolle prossed the charges in the burglary prosecution.

On September 2, 1981, appellee filed in the present case (the firearms prosecution) a motion to suppress the revolver that had also been seized on May 11. On September 8 a hearing was held on the motion before the Honorable Eugene H. CLARKE, Jr. Appellee argued that, given Judge DIAZ's order of August 31, the Commonwealth was collaterally estopped from relitigating the validity of the May 11

search. Judge CLARKE reserved his ruling and received evidence on the motion. On January 18, 1982, after considering the parties' briefs on the issue, Judge CLARKE "rul[ed] that the Commonwealth cannot relitigate the Motion to Suppress on the basis of collateral estoppel." N.T. January 18, 1982, 2. It is this ruling from which the Commonwealth now appeals.

Generally stated, the principle of collateral estoppel is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982). *See also Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) ("when an issue of ultimate fact has once been determined by a valid and final judgment that issue cannot again be litigated between the same parties in any future lawsuit").

Here, the parties to both actions—the burglary prosecution and the firearms prosecution—are the same. *Cf. Commonwealth v. Brown*, 473 Pa. 458, 375 A.2d 331 (1977) (acquittal of one defendant does not collaterally estop prosecution from relitigating same issue in prosecution of another defendant even though same transaction is involved); *People v. Gephart*, 93 Cal.App.3d 989, 156 Cal.Rptr. 489 (1979) (prosecution in one county not collaterally estopped by suppression of evidence in different county in case involving unrelated charges).

Also, the issue that Judge CLARKE had to decide on the suppression motion in the firearms prosecution was decided by Judge DIAZ on the suppression motion in the burglary prosecution, and the determination of that issue was essential to the suppression order entered in the burglary prosecution. The Commonwealth argues that Judge DIAZ did not determine the admissibility of the revolver when he determined the admissibility of the burglary proceeds found in the carrying cases, but this argument is without merit.

104

The legality of the search of appellee's pants, in which the revolver was found, turned on the nature of the police officer's action in stopping appellee, before seizing the revolver and the carrying cases. On the motion in the burglary prosecution Judge DIAZ expressly held that the stopping constituted an arrest, and that the officer did not at that time have probable cause to arrest. This holding determined the validity of the search incident to which the revolver was seized, and under this holding, the revolver, equally with the contents of the carrying cases, was inadmissible as the fruit of an illegal arrest.

The Commonwealth does not argue, either that it did not have a full and fair opportunity to litigate the suppression motion before Judge DIAZ, or that it did not have the right to appeal the order entered on that motion. Moreover, the Commonwealth had every incentive to litigate the motion, and to appeal the order entered on the motion, for the burglary charge was more serious than the firearms charges,[1] and it was foreseeable that the same issue of the validity of the search that had arisen in the burglary prosecution would arise in the firearms prosecution. In this regard it may be noted that Judge DIAZ stated that he thought the motion presented a close question and that the Commonwealth should appeal his order. However, instead of appealing, or petitioning to reopen the suppression hearing,[2] the Commonwealth filed a nolle pros of the burglary charges.

■ The Commonwealth argues that Judge DIAZ's suppression order was an evidentiary decision, interlocutory

1. Burglary is a felony of the first degree, 18 Pa.C.S. § 3502(c), punishable by up to 20 years imprisonment, 18 Pa.C.S. § 1103(1). Firearms offenses are misdemeanors of the first degree, 18 Pa.C.S. § 6119, punishable by up to 5 years imprisonment, 18 Pa.C.S. § 1104(1).

2. In appropriate circumstances the suppression court may on petition by the Commonwealth reopen the suppression hearing. *See, e.g., Commonwealth v. Ryan,* 296 Pa.Super. 222, 442 A.2d 739 (1982) (court erred in denying petition to reopen suppression hearing when all parties believed hearing to be in abeyance pending resolution of burden of proof issue); *Commonwealth v. Branch,* 292 Pa.Super. 425, 437 A.2d 748 (1981) (suppression court did not abuse its discretion in reopening suppression hearing for receipt of additional testimony three days after entering findings of fact and conclusions of law, following Commonwealth's motion).

and not final in character, and that its nolle pros of the burglary charges was a voluntary withdrawal of the charges and not a final judgment because a nolle pros may in certain circumstances be removed. These arguments are also without merit. Judge DIAZ's suppression order was final and appealable, for it substantially handicapped or terminated the burglary prosecution, *Commonwealth v. Lapia, supra,* and although a nolle pros may in certain circumstances be removed, an order already final is not made any less final by later removal.

We therefore have no hesitancy in concluding that all of the requirements of the principle of collateral estoppel have been met: same parties; issue actually litigated before Judge DIAZ and determined by his valid and final judgment; and determination essential to his judgment. The question remains, however, whether Judge DIAZ's determination was conclusive on Judge CLARKE.

We may start our examination of this question by considering whether, as appellee argues, the answer to it is dictated by constitutional considerations.

In *Ashe v. Swenson, supra,* the United States Supreme Court held that the principle of collateral estoppel is embodied in the fifth amendment guarantee against double jeopardy. Here, however, Judge DIAZ's suppression order was entered pre-trial, which is to say, before jeopardy had attached.

The United States Supreme Court has not yet decided whether the principle of collateral estoppel is embodied in the due process clause of the fourteenth amendment to the United States Constitution. In *Hoag v. New Jersey,* 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), the Court did not decide that issue because it concluded that on the facts of the case, the principle of collateral estoppel did not apply. The Court's opinion in *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), suggests that on other facts the principle of collateral estoppel may be applicable, even when the fifth amendment guarantee against double jeopardy is not applicable because jeopardy has not

yet attached. In *Oppenheimer* the appellant was indicted for a conspiracy to conceal assets from a trustee in bankruptcy. He defended on the ground that on a former indictment for the same offense it had been decided that prosecution was barred by the statute of limitations in the Bankruptcy Act. That decision had since been held wrong in a different case. The government argued that the doctrine of res judicata was inapplicable because it existed only under the fifth amendment double jeopardy clause, which was inapplicable. Rejecting this argument, the Court stated:

> It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightfully mentioned with solemn reverence, are less than those that protect from a liability in debt. It cannot be that a judgment of acquittal on the ground of the Statute of Limitations is less a protection against a second trial than a judgment upon the ground of innocence, or that such a judgment is any more effective when entered after a verdict than if entered by the government's consent before a jury is empaneled; or that it is conclusive if entered upon the general issue ... but if upon a special plea of the statute, permits the defendant to be prosecuted again.
>
> · · · · ·
>
> The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice ... in order, when a man once has been acquitted on the merits, to enable the government to prosecute him a second time.

242 U.S. at 87–88, 37 S.Ct. at 69 (citations omitted).

In addition to this statement by the United States Supreme Court, the Court of Appeals for the Second Circuit has suggested that the principle of collateral estoppel is embodied in the due process clause of the fourteenth

amendment. *See United States ex rel. DiGiangiemo v. Regan,* 528 F.2d 1262, 1266 (2d Cir.1975), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976) ("Assuming that the state has had an opportunity for full hearing on suppression and at least one appeal as of right, we think due process would forbid relitigation of the issue determined adversely to it, although not, of course, the prosecution of X for [a different offense] on the basis of other evidence.") This suggestion, however, was *dictum* only.

State courts have resolved the issue of whether the principle of collateral estoppel is applicable to pre-trial suppression orders in varying ways. *See People v. Williams,* 89 Cal.App.3d 1026, 152 Cal.Rptr. 892 (1979) (under California Penal Code, motion to suppress in superior court felony case is not controlled by earlier suppression order in municipal court misdemeanor case); *State v. McCord,* 402 So.2d 1147 (Fla.1981) (state not collaterally estopped by prior suppression order; principle of collateral estoppel inapplicable since defendant was never placed in jeopardy); *People v. Williams,* 59 Ill.2d 557, 322 N.E.2d 461 (1975) (state collaterally estopped by prior suppression order that it chose not to appeal); *State v. Doucet,* 359 So.2d 1239 (La.1977) (on rehearing) (state not collaterally estopped by prior suppression order; policy against perpetuating erroneous rulings outweighs policy against harassment and inefficiency; court can prevent prosecutorial abuse); *Cook v. State,* 281 Md. 665, 381 A.2d 671, *cert. denied,* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978) (state not collaterally estopped by prior suppression order; suppression order itself is interlocutory and not final judgment and state has no right of appeal from suppression order; declaration of mistrial means issue may be relitigated); *Commonwealth v. Scala,* 380 Mass. 500, 404 N.E.2d 83 (1980) (Commonwealth not collaterally estopped by prior suppression order; court had no record of suppression hearing and therefore could not determine whether suppression ruling reflected full and careful litigation of issues; Commonwealth had no right of appeal at time order was entered; in any event, it

may be that issue should be controlled by policies underlying exclusionary rule and not those underlying principle of collateral estoppel); *State v. Gonzalez,* 75 N.J. 181, 380 A.2d 1128 (1977) (state collaterally estopped by order of suppression in coindictee's case; both cases involved similar charges, same incident and same evidence); *State v. Lay,* 56 N.C.App. 796, 290 S.E.2d 405, *app. dismissed, petition denied,* 306 N.C. 390, 294 S.E.2d 216 (1982) (state not collaterally estopped by suppression order entered in misdemeanor case from asserting validity of search warrant relied on in felony indictments; application of principle would nullify statutory rights granted state in prosecuting felonies); *State v. Greenwood,* 565 P.2d 701 (Okla.Crim. App.1977) (pre-trial suppression ruling may be overruled at trial and therefore is not final and not binding in second trial on different offense); *Commonwealth v. O'Bryant,* 320 Pa.Super. 231, 467 A.2d 14 (1983) (if trial court on remand finds that prior adjudication was that warrant was defective, appellant can invoke principle of collateral estoppel).

■ Having thus examined the state of the law, we have concluded that we need not, and therefore should not, rest our decision on constitutional grounds. Whatever may be the United States Supreme Court's eventual resolution of the issue of whether the fourteenth amendment embodies the principle of collateral estoppel, and however other states may have resolved the issue of the applicability of the principle under their particular laws, in this case, we have concluded, the principle as a matter of state law barred the Commonwealth from relitigating the validity of the May 11, 1981, search. *Cf. Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983) (regardless of how United States Supreme Court may ultimately resolve federal constitutional issue, as matter of state law principle of collateral estoppel precludes finding of probation revocation based on probationer's participation in a crime where probation revocation hearing was deferred until after trial at which probationer was acquitted of the crime). We have reached this

conclusion after a consideration of the policies underlying the principle of collateral estoppel. In our ensuing discussion of these policies, we have been helped by the discussion in *United States ex rel. DiGiangiemo v. Regan, supra.*

One policy underlying the principle of collateral estoppel is that relitigation should not result in the incarceration of an innocent person. The determination of an issue in favor of the accused in one proceeding casts doubt upon the validity of a contrary determination of the same issue in a later proceeding. This particular concern is not applicable in a case such as this one, where the issue decided, *i.e.*, the validity of the search, does not go to the accused's guilt or innocence and there has been no verdict of acquittal. There is, however, an analogous concern, and that is that relitigation may result in the incarceration of a person whose rights have been violated, for a suppression order based on a finding that the accused's rights were violated casts doubt upon the validity of a later determination that the accused's rights were not violated.

Another policy underlying the principle of collateral estoppel is the protection of the accused's legitimate reliance on the determination of an issue in his favor, and another, closely related, policy is the promotion of judicial economy. Both of these policies are applicable here, where at the first suppression hearing appellant obtained a determination on the issue of the legality of the search favorable to him, and then at the second suppression hearing pleaded that by virtue of the principle of collateral estoppel, further litigation of that issue was barred.

Still another policy underlying the principle of collateral estoppel is that the prosecution should be precluded from harassing an accused by subjecting him to repeated proceedings. Again, this policy is applicable here. If the Commonwealth had appealed the first suppression order, the order would have been afforded considerable deference on appeal. *See Commonwealth v. Goodwin*, 460 Pa. 516, 521, 333 A.2d 892, 895 (1975) (appellate court determines only "whether the record supports the factual findings of

the court below and the legitimacy of the inferences and legal conclusions drawn from those findings"). Instead, the Commonwealth attempted to force appellant to litigate *de novo* the validity of the search incident to which the revolver was seized.

■ The Commonwealth argues that even if on the second suppression motion Judge CLARKE should not have taken evidence, and even if he was right not to make new findings of fact, still he was free to review the record, and, accepting Judge DIAZ's findings, make contrary conclusions of law. The difficulty with this argument is that whether the stop of appellee was an arrest and whether the officer had probable cause were not pure conclusions of law by Judge DIAZ, which Judge CLARKE could ignore while at the same time accepting Judge DIAZ's findings of fact. Rather, these issues are mixed questions of fact and law— just as negligence, or reasonable care, is. *See, e.g., State v. Gonzalez, supra.* Furthermore, and in any event, the principle of collateral estoppel ordinarily extends to pure conclusions of law. "In such a case, it is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of 'law.'" Restatement (Second) of Judgments § 28 Comment b at 275 (1982). *See Pulli v. Warren National Bank,* 488 Pa. 194, 412 A.2d 464 (1979) (appellant estopped from seeking damages pursuant to oral contract because final decree in former action for specific performance established that contract was within Statute of Frauds and therefore unenforceable).

The only policy underlying the principle of collateral estoppel cited by the Commonwealth in support of its argument that it should have been permitted to relitigate the suppression motion is the policy against perpetuating an erroneous ruling. On the facts of this case, however, that policy can be given very little, if any, weight. As already stated: The Commonwealth had a full and fair opportunity to litigate the issue of the legality of the search at the

hearing on the first suppression motion. If the order entered on that motion was error, the error could be corrected on appeal. And since the order was entered in the more serious of the two prosecutions against appellant—the burglary prosecution—the Commonwealth had every incentive to appeal.

In short, we are unable to discern any policy that supports the Commonwealth's decision not to appeal but instead to file a nolle pros of the burglary prosecution and then attempt to relitigate the issue of the validity of the search at the hearing on the suppression motion in the firearms prosecution. We therefore hold that the principle of collateral estoppel barred relitigation of the validity of the May 11, 1981, search.

Order affirmed.

POPOVICH, J., concurred in the result.