Commonwealth *v.* McCants, Appellant.

Argued April 25, 1972. Before JONES, C .J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Francis S. Wright,* Assistant Defender, with him *Vincent J. Ziccardi,* Defender, for appellant.

*David Richman,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, January 19, 1973:

The appellant, John McCants, was arrested after marijuana and heroin were discovered during the search of a vacant second-floor front apartment of a multi-dwelling unit where he resided. The search was conducted pursuant to a fifteen-day-old warrant. Although the apartment was vacant and the appellant claimed he lived in the second-floor rear apartment with his mother, the arresting officer had observed the appellant in the vacant apartment and also had information that the appellant was using the vacant apartment to transact the sale of narcotics.

The appellant was found guilty of possession of narcotic drugs in a nonjury trial and sentenced to a prison term of not less than six nor more than twenty-three months. Judgment of sentence was affirmed by the Superior Court and this appeal followed.

The Commonwealth's evidence consisted solely of the testimony of the arresting officer and the admission of the seized drugs. The seized drugs were admitted into evidence following a denial of the appellant's motion to suppress. In the motion to suppress, the appel-

lant claimed the search warrant used by the arresting officer was invalid because it had been issued on May 22, 1970 and not executed until June 5, 1970, fifteen days later.

On appeal to this court the appellant does not question the grounds for the original issuance of the search warrant but maintains that any probable cause for the original issuance of the warrant had dissipated by the time the warrant was executed. Without probable cause, argues the appellant, the drugs were seized pursuant to a constitutionally invalid search warrant and, therefore, it was error to admit them into evidence.

A search or a seizure warrant is valid if: (1) Probable cause exists, and (2) The determination of probable cause is made by the proper neutral issuing authority.

Both of the above factors are equally important. Since the existence or nonexistence of probable cause requires a common sense judgment, and not a rote application of a predetermined checklist to available facts, the person *who* makes the judgment is vital.

The following general guideline has been provided for probable cause in *Draper v. United States,* 358 U.S. 307, 313, 3 L. Ed. 2d 327 (1959): "In dealing with probable cause, . . . as the name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act."

While only general guidelines are possible on the issue of probable cause, the constitutional requirements are more certain as to who must make the determination that probable cause exists.

In *Aguilar v. Texas,* 378 U.S. 108, 110-11, 12 L. Ed. 2d 723 (1964) the Supreme Court stated: "An evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue war-

rants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests.' . . . The reasons for this rule go to the foundations of the Fourth Amendment. A contrary rule 'that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers'."

Requiring neutral and detached magistrates—not police officers—to determine probable cause does not mean that police officers are incapable of making intelligent determinations from the evidence available. Rather, it is a recognition that the police are adversaries of the suspected offender and if the protections of the Fourth Amendment are to be applied in a fair manner, a check is required by a person in a neutral status. "The point of the Fourth Amendment which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Aguilar v. Texas, supra.*

It is the duty of the reviewing court to examine not only whether probable cause existed, but also, whether a neutral and detached magistrate made the probable cause determination. "Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Aguilar v. Texas, supra.*

The important question in the instant case is whether, *at the time the warrant was used,* fifteen days after

its issuance, it can be said that the warrant was based upon an independent finding by a neutral and detached magistrate that probable cause *continued to exist.*

In *Commonwealth v. Shaw,* 444 Pa. 110, 113-14, 281 A. 2d 897 (1971) this court stated: "In order for the issuance of a search warrant to be constitutionally valid, the issuing officer must reach the conclusion that probable cause exists at the time he issues the warrant. Such a decision may not be made arbitrarily and must be based on facts *which are closely related in time to the date the warrant is issued.* . . . 'A search warrant must issue, if at all, *upon an existing cause.* A search warrant is no general aim for ferreting out crime, but a special proceeding, based on *present cause,* hedged by constitutional provisions, which must be *speedily executed.* . . ." (Emphasis supplied.)

In *Shaw* this court recognized that the facts and circumstances justifying a determination that probable cause exists may quickly change. This is not to say that the facts and circumstances are so fleeting that they always change. There are times when the facts and circumstances presented to the magistrate remain unchanged long after the warrant is issued. However, once it is recognized that it is *possible* for the facts and circumstances to change with the passing of time, a redetermination of probable cause is constitutionally required. Therefore, when there is an unreasonable lapse of time after a search warrant has been issued and not yet used for a search, it is mandatory that the police return to the issuing authority for a redetermination of probable cause. If this is not done, it is the police who are making the determination that probable cause still exists, and not a "neutral and detached" magistrate.

The search warrant in this case was invalid because at the time it was used as authority for the search of

the vacant apartment it was lifeless because the necessary supporting judgment of the neutral magistrate was too remote in time. We cannot now validate the warrant by determining that probable cause did in fact exist. That independent determination by a neutral authority must be made before a warrant is used, not later. Any unreasonable time lapse between the issuance of a search warrant *by an independent and neutral magistrate,* and the use of the warrant as authority for a search *by a police officer* jeopardizes the validity of the warrant.

The drugs seized in this case were fruits of a search without a valid warrant and this evidence should have been suppressed.

Judgment reversed and a new trial ordered.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I agree with the majority that absent a controlling statute or rule of procedure which sets a fixed time limit for the execution of search warrants, it is necessary to approach today's question under a standard of "reasonableness". As the majority decides, "[a]ny unreasonable time lapse between the issuance of a search warrant by an independent and neutral magistrate, and the use of the warrant as authority for a search by a police officer jeopardizes the validity of the warrant." The opinion of the Court, however, does not indicate *why* this execution occurred after a reasonable amount of time had passed, save the conclusory statement that, at the time of execution, the warrant was "lifeless" because the determination of the magistrate was "too remote in time".

In my view resolution of the "reasonableness" of the delay in executing a warrant necessarily depends on analysis of the facts of each case: the reason for the delay, the nature of the property sought in the search

(its size, its mobility, whether it is consumable or ordinarily expended, whether it is often carried on the person and thus moved from location to location), etc.

Moreover, since it is the Commonwealth, if anyone, who would have knowledge of circumstances giving rise to the delay in execution of a search or arrest warrant, I believe that the Commonwealth should bear the burden of establishing its reasonableness. At the suppression hearing in this case, the police officer was asked by the district attorney to account for the 15-day delay. He replied that "it was difficult to get in there". There was no evidence of the nature of the residence to be searched which would have made it "difficult to get in there," nor was there evidence of the nature of the property to be seized, other than that it was a quantity of narcotics.[1] I have no difficulty in concluding that this record fails to present a constitutionally sufficient justification for the delay, and I therefore concur in the view that the product of the search should have been suppressed.

It must be conceded, however, that resolution of the question of reasonableness of delay in executing a warrant presents obvious difficulties for the lower courts. Since this Court does not indicate the criteria to be used in making the determination, I personally would endorse the adoption of a rule of criminal procedure setting a fixed period of time within which a warrant must be utilized by the police. See, e.g., Federal Rule of Criminal Procedure 41(c) (10-day limit).

Mr. Chief Justice JONES joins in this concurring opinion.

---

[1] The record shows that the search conducted by police here netted 0.8 grams of compressed marijuana and 2.4 grams of heroin.