581 A.2d 1380

**COMMONWEALTH of Pennsylvania**

v.

**Peter A. BYBEL, Appellant.**

Superior Court of Pennsylvania.

Argued March 28, 1990.

Filed Nov. 5, 1990.

Emmanuel H. Dimitriou, Reading, for appellant.

Charles M. Guthrie, Jr., Asst. Dist. Atty., Reading, for Com.

Before WIEAND, BECK and POPOVICH, JJ.

WIEAND, Judge.

Peter Bybel was tried by jury and was found guilty of third degree murder in the shooting death of David Renninger on July 5, 1987.[1] Post-trial motions were denied, and a sentence of imprisonment was imposed. On direct appeal, Bybel challenges the sufficiency of the evidence to sustain the conviction and alleges numerous trial errors. After careful review, we conclude that a new trial is necessary.

1. Bybel was also found guilty on two counts of aggravated assault.

"In reviewing appellant's challenge to the sufficiency of the evidence we must determine 'whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[ ] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.'" *Commonwealth v. Sabharwal*, 373 Pa.Super. 241, 243, 540 A.2d 957, 958 (1988), quoting *Commonwealth v. Jackson*, 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984).... The same standard is applicable in cases, such as the instant case, where the evidence supporting a conviction "is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988). See also: *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Petrisko*, 442 Pa. 575, 579–580, 275 A.2d 46, 49 (1971). There is no requirement that the Commonwealth exclude all possibility that a third party may have committed the crime. See: *Commonwealth v. Sullivan, supra* [472 Pa.] at 152–153, 371 A.2d at 479; *Commonwealth v. Kravitz*, 400 Pa. 198, 212–213, 161 A.2d 861, 868 (1960), *cert. denied*, 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961).

*Commonwealth v. Akers*, 392 Pa.Super. 170, 181, 572 A.2d 746, 751 (1990).

On July 5, 1987, David Renninger's dead body was found lying beside his motorcycle along a path which crossed wooded property owned by Peter Bybel in Berks County. Renninger had been killed by a bullet fired from a .22 caliber rifle. Such a rifle was found in the basement of Bybel's home. Expert testimony identified it as the rifle from which the fatal shot had been fired. Bybel, the evidence showed, had been working around his property on the day of the shooting. Other evidence showed that Bybel, an eighty-one (81) year old man, had threatened, on prior

occasions, to shoot persons who had operated motorcycles in the same area. A week before the shooting, Bybel had told a cyclist that if the rider returned, he, Bybel, would shoot him, "no questions asked." Approximately two and one-half months before, another motorcyclist in the same area had seen Bybel carrying a rifle and had heard shots as he rode away. A year before, another motorcyclist had reported shots being fired in the same area, and still earlier, Bybel had confronted a motorcyclist with a rifle. A neighbor testified that on several occasions he had observed appellant running towards the path, carrying a rifle, as motorcycles passed.

This evidence, although circumstantial, was sufficient to enable a jury to find that it was appellant who had fired the fatal shot. See and compare: *Commonwealth v. Vedam,* 349 Pa.Super. 270, 502 A.2d 1383 (1986). It was also sufficient to show a killing with malice.

There is no requirement that a homicide ... be proven by eyewitness testimony. Circumstantial evidence may be sufficient to prove any element, or all of the elements of the crime. *Commonwealth v. Crowson,* 488 Pa. 537, 542, 412 A.2d 1363, 1365 (1980); *Commonwealth v. Amato,* 449 Pa. 592, 297 A.2d 462 (1972); *Commonwealth v. Chester,* 410 Pa. 45, 188 A.2d 323 (1963). Furthermore, "[a]lthough no single bit of evidence may conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt." *Crowson, supra* 488 Pa. at 543, 412 A.2d at 1365. *See Commonwealth v. Dawson,* 464 Pa. 254, 346 A.2d 545 (1975).

*Commonwealth v. Hardcastle,* 519 Pa. 236, 250, 546 A.2d 1101, 1107–1108 (1988). The trial court properly denied appellant's motion in arrest of judgment.

Because the evidence at trial was sufficient to support the verdict, appellant's claim that the trial court erred in failing to grant habeas corpus relief is also lacking in merit. "[T]he failure to establish a prima facie case at a preliminary hearing 'is clearly immaterial where at the trial the

Commonwealth met its burden of proving the [offense] beyond a reasonable doubt.' " *Commonwealth v. Troop,* 391 Pa.Super. 613, 620, 571 A.2d 1084, 1088 (1990), quoting *Commonwealth v. McCullough,* 501 Pa. 423, 427, 461 A.2d 1229, 1231 (1983). Appellant's claims that the trial court erred in denying a defense demurrer and a motion for directed verdict are equally without merit. See: *Commonwealth v. Boone,* 467 Pa. 168, 354 A.2d 898 (1975); *Commonwealth v. Bastone,* 321 Pa.Super. 232, 467 A.2d 1339 (1983). See also: *Commonwealth v. Chapman,* 255 Pa.Super. 265, 386 A.2d 994 (1978).

■ Appellant argues, however, that the trial court erred by allowing testimony from other trespassers who had been threatened by appellant or who had heard shots fired while on his land. The applicable law was stated by the Supreme Court of Pennsylvania in *Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989), as follows:

> Evidence of a defendant's distinct crimes are not generally admissible against a defendant solely to show his bad character or his propensity for committing criminal acts, as proof of the commission of one offense is not generally proof of the commission of another. *Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491, 497 (1988). However, this general proscription against admission of a defendant's distinct criminal acts is subject to numerous exceptions where special circumstances exist which render such evidence relevant for some legitimate evidentiary reason and not merely to prejudice the defendant by showing him to be a person of bad character. Some of the exceptions that this Court has recognized in the past as legitimate bases for admitting evidence of a defendant's distinct crimes include (but are not limited to): (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one naturally tends to prove the others; (5) to establish the identity of the person charged with the commission of the crime on trial where there is such a logical connection

between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "res gestae" exception). *See Commonwealth v. Lark, supra* 518 Pa. at 302, 543 A.2d at 497 and cases cited therein, *and Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (1987).

*Id.*, 521 Pa. at 177, 555 A.2d at 840. In the instant case, the evidence of prior threats and shootings was relevant to show (1) the identity of Renninger's killer, (2) his intent, and (3) the motive for the killing. It was particularly compelling when coupled with evidence that the death dealing weapon had been owned by appellant and had been found in the basement of his home. The trial court did not err when it received evidence of appellant's prior conduct toward trespassing motorcyclists.

Appellant also complains that the trial court inadequately instructed the jury regarding the purpose of the evidence relating to his prior conduct. However, appellant took no exception to this portion of the trial court's charge, and this issue, therefore, has been waived. See: Pa.R.Crim.P. 1119(b). See also: *Commonwealth v. Billa, supra,* 521 Pa. at 181, 555 A.2d at 842; *Commonwealth v. Barnhart*, 290 Pa.Super. 182, 434 A.2d 191 (1981). Moreover, our review of the trial court's charge suggests that the jury was properly instructed. The trial court was not required to advise the jury whether appellant's prior acts were criminal and, if so, the precise identity of the offenses which he had committed.

█ Appellant next contends that the trial court erred when it refused to suppress the murder weapon found in the basement of his home. He argues that the search, although conducted pursuant to warrant, was illegal because it was not supported by probable cause.

In determining probable cause, Pennsylvania has adopted the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and followed in *Commonwealth v. Gray* [,] 509 Pa. 476, 503 A.2d 921 (1985). The test now utilized for analyzing warrants is as follows:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed."

*Commonwealth v. Melilli*, 521 Pa. 405, 419, 555 A.2d 1254, 1261 (1989) (citation omitted), quoting *Gates, supra* 462 U.S. at 237–38, 103 S.Ct. at 2332.

*Commonwealth v. Echevarria*, 394 Pa.Super. 261, 265, 575 A.2d 620, 622 (1990), quoting *Commonwealth v. Karns*, 389 Pa.Super. 58, 60, 566 A.2d 615, 616 (1989). See: *Commonwealth v. Breakiron*, 524 Pa. 282, 571 A.2d 1035 (1990); *Commonwealth v. Weidenmoyer*, 518 Pa. 2, 539 A.2d 1291 (1988).

Before an issuing authority may issue a constitutionally valid search warrant he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582, *cert. denied*, 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975); *Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441 (1970). The requisite probable cause must exist at the time the warrant is issued and be based on facts closely related in time to the date of issuance. *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342 (1981); *Commonwealth v. Jackson, supra; Commonwealth v.*

*Eazer*, 455 Pa. 320, 312 A.2d 398 (1973); *Commonwealth v. McCants*, 450 Pa. 245, 299 A.2d 283 (1973); *Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819 (1973). If the district justice is presented with evidence of criminal activity at some prior time, it must also be established that the criminal activity continued up to the time of the request for the warrant in order to support a finding of probable cause.

*Commonwealth v. Jones*, 506 Pa. 262, 269, 484 A.2d 1383, 1387 (1984). See also: *Commonwealth v. Burkholder*, 388 Pa.Super. 252, 565 A.2d 472 (1989).

The affidavit in this case contained averments that Renninger had been shot on Bybel's property with a .22 caliber rifle. It then recited the observations of eight named witnesses who had observed Bybel's responses to trespassing motorcyclists on prior occasions. These responses included Bybel's appearance with a rifle, his making threats to shoot trespassers, and, on occasion, the firing of shots. Finally, the affidavit recited that Bybel was known to own a .22 caliber rifle because police had confiscated it seven months earlier and had returned it to his granddaughter. Thus, the police had relied on the circumstances of the killing, Bybel's known ownership of a gun of the same type from which the fatal shot had been fired, and a course of conduct on the part of Bybel which evidenced violence and threats of violence against trespassing motorcyclists. This established probable cause for the issuance of a warrant to search Bybel's residence for the offending .22 caliber rifle.

▆ Because the affidavit recited a continuing course of conduct leading up to the date of Renninger's death, appellant's contention that the warrant was issued on stale information must fail. See: *Commonwealth v. Stamps*, 493 Pa. 530, 427 A.2d 141 (1981); *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342 (1981). Appellant's course of conduct was continuing and tended to identify him as the principal suspect in Renninger's shooting. The information, moreover, had been supplied by eyewitnesses to appellant's prior responses to trespassing motorcyclists. The trustwor-

thiness of such information, therefore, could be presumed. See: *Commonwealth v. Weidenmoyer, supra; Commonwealth v. Reel,* 499 Pa. 381, 453 A.2d 923 (1982); *Commonwealth v. Sudler,* 496 Pa. 295, 436 A.2d 1376 (1981). Because the search warrant was based on more than adequate probable cause, the trial court did not err when it refused to suppress the rifle found as a result of a search of appellant's basement.

■ On July 5, 1987, the day of the killing, police approached appellant, who owned the land on which Renninger's body had been found, and asked him if he would come to the police station to discuss the incident. Appellant voluntarily accompanied police and, at the police station, was questioned for approximately twenty minutes. During that time, appellant said that he had been working on his land and had been around the house on the day of the shooting but had not seen or heard anything related thereto. At the end of the interview, appellant was taken back to his home.

On July 8, 1987, police again asked appellant to come to the police station. He initially refused, but later he appeared with his son and a lawyer. When police attempted to question him, however, he accepted the advice of counsel and declined to answer questions. Police then produced a search warrant for appellant's home. Upon arrival at appellant's home, he led police into the cellar, where he pointed to a rifle in the rafters and said, "there it is." Appellant was arrested and charged with murder on July 10, 1987.

Appellant argues that his several statements to the police should have been suppressed because they were not preceded by *Miranda* warnings.[2] The trial court found, however, that appellant had not been subjected to custodial interrogation on either July 5 or July 8. Because there had been no custodial interrogation, the court held, *Miranda* warnings were unnecessary. We agree with this analysis.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Miranda* warnings are necessary only on those occasions when a suspect is undergoing actual "custodial interrogation." The fact that a defendant was the focus of the investigation is a relevant factor in determining whether he was "in custody." However, the fact that a police investigation has focused on a particular person no longer automatically requires *Miranda* warnings.

*Commonwealth v. Fento,* 363 Pa.Super. 488, 492, 526 A.2d 784, 786 (1987). See also: *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985), *cert. denied,* 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986); *Commonwealth v. Smith,* 382 Pa.Super. 288, 555 A.2d 185 (1989). "[P]olice detentions only become 'custodial' when under the totality of the circumstances the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest." *Commonwealth v. Ellis,* 379 Pa.Super. 337, 356, 549 A.2d 1323, 1332 (1988). See also: *Commonwealth v. Douglass,* 372 Pa.Super. 227, 238–239, 539 A.2d 412, 418 (1988) (plurality opinion).

Among the factors the court utilizes in determining whether the detention is custodial or investigative are: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat, or use of force; and the methods of investigation used to confirm or dispel suspicions.

*Commonwealth v. Haupt,* 389 Pa.Super. 614, 625–626, 567 A.2d 1074, 1078 (1989). See also: *Commonwealth v. Douglass, supra* 372 Pa.Super. at 245, 539 A.2d at 421.

In reviewing the trial court's finding that appellant had not been subjected to custodial interrogation, we must determine whether the finding was supported by competent evidence. "In making this determination, we consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v.*

*Dillon,* 386 Pa.Super. 236, 241, 562 A.2d 885, 888 (1989), *allocatur granted,* 524 Pa. 595, 568 A.2d 1245 (1989). See: *Commonwealth v. Lark,* 505 Pa. 126, 129, 477 A.2d 857, 859 (1984).

On both occasions, appellant's presence at the police station was voluntary. On neither occasion was he placed under arrest or subjected to force or threat of force. The first interrogation continued for only twenty (20) minutes, and on the second occasion appellant was accompanied by his lawyer. At his home during execution of the search warrant, appellant's counsel was also present. Under the totality of these circumstances, the trial court could properly find that appellant was not under arrest or subject to coercion from which he could reasonably believe that he was in custody. See: *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Douglass, supra* 372 Pa.Super. at 238–239, 539 A.2d at 418; *Commonwealth v. Haggerty,* 495 Pa. 612, 435 A.2d 174 (1981); *Commonwealth v. Benson,* 317 Pa.Super. 139, 463 A.2d 1123 (1983). See also: *Commonwealth v. Haupt, supra; Commonwealth v. Ellis, supra.* Cf. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (suspect who voluntarily accompanies police to station house for questioning was not "in custody"). Because appellant was not subjected to custodial interrogation, *Miranda* warnings were unnecessary, and the trial court properly refused to suppress statements made by appellant on these occasions.

 When the trial started, appellant was charged, in a separate count of the information, with involuntary manslaughter. After the evidence had been presented and before the case was submitted to the jury, the Commonwealth asked the trial court to "dismiss" the charge of involuntary manslaughter. The defense objected and specifically requested the court to instruct the jury that involuntary manslaughter was a possible verdict. The trial court held that there was no evidence to support a finding

of involuntary manslaughter and refused to charge that a finding of involuntary manslaughter was possible. Although the court refused to charge on a reckless or grossly negligent homicide, the court nevertheless instructed the jury that it could find that Renninger's death had been caused by accidental misadventure. Appellant argues that the court erred when it refused to instruct the jury on involuntary manslaughter. We are constrained to agree.

The rule pertaining to the necessity for an involuntary manslaughter charge has been settled by recent Supreme Court decisions. In *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980), the Court held that "in a murder prosecution, an involuntary manslaughter charge shall be given only when requested, and where the offense has been made an issue in the case and trial evidence reasonably would support such a verdict." *Id.*, 490 Pa. at 190, 415 A.2d at 407. Subsequent decisions have followed this rule. See: *Commonwealth v. Yarris*, 519 Pa. 571, 549 A.2d 513 (1988) (involuntary manslaughter charge unnecessary where defendant contended that he had not killed the victim); *Commonwealth v. Smith*, 511 Pa. 343, 513 A.2d 1371 (1986) (involuntary manslaughter charge unnecessary where evidence overwhelmingly indicated intentional killing); *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980) (involuntary manslaughter charge unnecessary where homicide occurred during armed burglary and robbery); *Commonwealth v. Jones*, 391 Pa.Super. 292, 570 A.2d 1338 (1990) (involuntary manslaughter charge unnecessary where evidence overwhelmingly indicated intentional killing); *Commonwealth v. Johnson*, 347 Pa.Super. 93, 500 A.2d 173, 179 (1985) (involuntary manslaughter charge unnecessary where homicide occurred during armed robbery); *Commonwealth v. Hassine*, 340 Pa.Super. 318, 490 A.2d 438 (1985) (involuntary manslaughter charge unnecessary where ample evidence of premeditated intentional killing). Cf. *Commonwealth v. Pritchett*, 320 Pa.Super. 359, 467 A.2d 364 (1983) (involuntary manslaughter charge unnecessary where, although defendant indicted on involuntary

manslaughter, charge withdrawn pre-trial and not pursued thereafter and present state of law would not permit conviction on withdrawn charge).

In the instant case, appellant had been specifically charged, inter alia, with involuntary manslaughter and had been actually tried on such a charge. It was not until all the evidence had been presented and in an effort to avoid a possible finding of involuntary manslaughter by the jury that the prosecution requested the court to withdraw the involuntary manslaughter charge from the jury's consideration. The defense objected vehemently and made repeated requests for an instruction on involuntary manslaughter. On review, therefore, the only issue to be determined is whether the evidence, viewed in a light most favorable to the defendant, would have permitted a finding that appellant's crime was involuntary manslaughter. *Commonwealth v. Terrell*, 482 Pa. 303, 393 A.2d 1117 (1978); *Commonwealth v. Draxinger*, 345 Pa.Super. 554, 498 A.2d 963 (1985).

Appellant was an eighty-one year old defendant, who offered no evidence in defense of the charges against him. His lawyer argued, in view of the trial court's ruling, that if the jury found that appellant had fired the shot which killed Renninger, it should find the killing to be accidental. He contended that appellant had been harassed—perhaps even beaten—by motorcyclists who had trespassed on his land. The land was uneven and heavily wooded. On the land, about one hundred yards from the house, was a lane over which the motorcycles, with engines screaming, would be driven by their operators. On at least one prior occasion appellant had threatened to shoot a motorcyclist, and on others he was known to have fired warning shots from his .22 caliber rifle. Until the death of Renninger, no one had ever been struck by bullets fired by appellant. Indeed, there was no sight on the rifle. Thus, a jury could have found, as his counsel argued to the court, that the shot which killed Renninger was fired from a distance as great as one hundred yards, through the woods, and struck a

motorcyclist moving at a high rate of speed over uneven terrain. A jury might also have found that the shot was intended, as shots had been intended in the past, as a warning and that it had accidentally gone astray. The Commonwealth's decision to charge appellant with involuntary manslaughter suggests that it was not unaware of this possibility.

Under these circumstances, we conclude that it was error to refuse appellant's request for a charge on involuntary manslaughter. See: *Commonwealth v. Draxinger, supra* (where any version of evidence in homicide trial supports a verdict of involuntary manslaughter, charge on involuntary manslaughter must be given if requested). The error is magnified by the trial court's decision to instruct the jury on accidental misadventure. Inasmuch as involuntary manslaughter is distinguishable from accidental misadventure primarily by conduct which is reckless or grossly negligent, an involuntary manslaughter charge was warranted. When the trial court refused appellant's request for a charge on involuntary manslaughter it erred.

The trial court also erred when it allowed the prosecution to introduce evidence that a loaded .22 caliber rifle had been removed by police from appellant's car following a minor accident which had occurred seven (7) months prior to the shooting. The evidence was irrelevant to the identity of Renninger's killer and the circumstances under which he had died. The evidence was also unfairly prejudicial to the defendant, for it depicted him as a "gun happy" old man who was unable to drive safely.

The Commonwealth argues that it was relevant because the gun thereafter had been delivered to appellant's granddaughter and thus had been available to appellant at the time of the shooting. In fact, however, there was no evidence that the offending gun had been given to appellant by his granddaughter and, in any event, the gun had been found in appellant's basement following the shooting, where appellant identified it for the police. In view thereof, the seizure of the gun by police following an accident seven

months earlier added nothing to the Commonwealth's case against appellant except to discredit him unfairly.

"Evidence is relevant if it tends to make more or less probable the existence of some fact material to the case, it tends to establish facts in issue or when to some degree advances the inquiry and thus has probative value." *Commonwealth v. Moore*, 389 Pa.Super. 473, 482, 567 A.2d 701, 706 (1989). See also: *Commonwealth v. Shain*, 324 Pa.Super. 456, 471 A.2d 1246 (1984). "The determination of relevancy issues must necessarily be left primarily to the discretion of the trial court, whose rulings thereon will not be disturbed unless there has been an abuse of discretion." *Commonwealth v. Gibbs*, 387 Pa.Super. 181, 186–187, 563 A.2d 1244, 1247 (1989). See also: *Commonwealth v. Cargo*, 498 Pa. 5, 444 A.2d 639 (1982); *Commonwealth v. Jackson*, 336 Pa.Super. 609, 619–620, 486 A.2d 431, 437 (1984). The fact that an issue of relevancy involves an exercise of discretion by the trial court, however, does not place the trial court's ruling thereon beyond appellate review. See: *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978) (evidence of victim's family life was irrelevant and prejudicial, and its admission in first degree murder prosecution was error); *Commonwealth v. Haight*, 332 Pa.Super. 269, 481 A.2d 357 (1984), *aff'd*, 514 Pa. 438, 525 A.2d 1199 (1987) (evidence of defendant's poverty was irrelevant and its admission was error where it may have discredited defendant and influenced jury in reaching its verdict); *Commonwealth v. Krajci*, 283 Pa.Super. 488, 424 A.2d 914 (1981) (admission of irrelevant evidence which is prejudicial to accused is error). In the instant case, we conclude that the trial court's ruling was an abuse of discretion. The evidence that a loaded rifle had been found in appellant's car following an accident which had occurred seven months earlier was both irrelevant and unduly prejudicial.

Reversed and remanded for a new trial. Jurisdiction is not retained.